IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
May 31, 2014
SUE BEITIA, CLERK

FRANK O. LOHER,                )    CIVIL 11-00731 LEK-KSC
                               )
          Plaintiff,           )
                               )
     vs.                       )
                               )
TODD THOMAS,                   )
                               )
          Defendant.           )
_____)

**ORDER GRANTING PETITIONER'S OBJECTIONS TO MAGISTRATE
JUDGE'S FINDINGS AND RECOMMENDATION TO GRANT IN PART AND
DENY IN PART AMENDED PETITION UNDER 28 U.S.C. § 2254 FOR
WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY; ADOPTING
IN PART AND REJECTING IN PART THE MAGISTRATE JUDGE'S FINDINGS
AND RECOMMENDATION; GRANTING PETITIONER'S AMENDED PETITION;
AND ORDERING RESPONDENT TO RELEASE PETITIONER FROM CUSTODY**

On October 2, 2013, the magistrate judge filed his

Findings and Recommendation to Grant in Part and Deny in Part

Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus

by a Person in State Custody ("F&R"). [Dkt. no. 21.] On

November 14, 2013, Petitioner Frank O. Loher ("Petitioner") filed

his objections to the F&R ("Objections"). [Dkt. no. 23.] On

December 10, 2013, Respondent Todd Thomas ("Respondent"), filed

his response to Petitioner's Objections ("Response"), and on

December 23, 2013, Petitioner filed his reply ("Reply"). [Dkt.

nos. 25, 26.] This matter is suitable for disposition without a

hearing pursuant to Rules LR7.2(e), LR74.2, and LR99.16.2(a) of

the Local Rules of Practice of the United States District Court

for the District of Hawai`i ("Local Rules"). After careful

consideration of the Objections, supporting and opposing memoranda, and the relevant legal authority, Petitioner's Objections are GRANTED, and the magistrate judge's F&R is ADOPTED IN PART AND REJECTED IN PART for the reasons set forth below. Accordingly, the Court GRANTS the Amended Petition, and ORDERS Respondent to release Petitioner from custody.

## BACKGROUND

Petitioner filed his Amended Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody on May 7, 2012 ("Amended Petition").  [Dkt no. 16.]  Petitioner raises three grounds for relief: (1) the Circuit Court of the First Circuit, State of Hawai`i ("trial court"), violated his rights to due process and against self-incrimination, under the Fifth and Fourteenth Amendments to the United States Constitution and Brooks v. Tennessee, 406 U.S. 605 (1972), by requiring Petitioner to testify as the first witness in his defense or not at all ("Ground I"); (2) appellate counsel, Randal I. Shintani, Esq., was ineffective, in violation of the Sixth and Fourteenth Amendments to the Constitution, by failing to raise Petitioner's Brooks claim on direct appeal ("Ground II"); and (3) the trial court violated Petitioner's rights to jury trial and due process, under the Sixth and Fourteenth Amendments to the Constitution and Apprendi v. New Jersey, 530 U.S. 466 (2000), by imposing an

extended term of imprisonment based on judge-found facts ("Ground III"). [Id. at pgs. 17-30.]

The magistrate judge recommended denying Petitioner relief as to Grounds I and II, but recommended granting the Amended Petition as to Ground III. [F&R at 1, 34.] Respondent does not object to the magistrate judge's recommendation to grant relief as to Ground III, [id. at 12-17 (Discussion, Section A.),] and that recommendation is HEREBY ADOPTED. Neither party objects to the magistrate judge's findings of background facts in the F&R, [id. at 2-12 (Background),] and those findings are HEREBY ADOPTED as well. Petitioner, however, objects to the magistrate judge's recommendation to deny relief as to Grounds I and II. [Id. at 17-33 (Discussion, B.-C.).] The remainder of this order discusses those objections.

The procedural history of this case is well known to both parties, and clearly set forth in the F&R. The pertinent facts are as follows.

## I. **Petitioner's Trial and Direct Appeal**

On August 19, 1999, Petitioner was charged with: (1) Attempted Sexual Assault in the First Degree, in violation of Haw. Rev. Stat. §§ 705-500, 707-730(1)(a) (1993) ("Count I"); and (2) Attempted Kidnapping, in violation of Haw. Rev. Stat. § 707-

720(1)(d) (1993) ("Count II").[1]  On Tuesday, November 14, 2000,

Petitioner's trial began at approximately 9:00 a.m., and the

prosecution's first witness took the stand at approximately

9:30 a.m. [Answer, filed 1/24/12 (dkt. no. 8), Exhs. B1, B2

(Trans. of 11/14/00 Tr. Proceedings ("11/14/00 Tr. Trans.")) at

3, 18.[2]]  The prosecution presented four witnesses and then

rested at approximately 2:10 p.m. [Id. at 158.]  At

approximately 2:30 p.m., after a fifteen-minute recess,

Petitioner's trial counsel, Neal Kugiya, Esq., requested a

continuance to the following trial day, Thursday, explaining that

none of Petitioner's witnesses were present in court that day.

[Id. at 159.]  He argued that he had not anticipated that the

prosecution's case would "finish this early . . . because they

have quite a number of people on the witness list," and that he

had attempted, unsuccessfully, to contact witnesses at the break.

[Id.]  The trial court denied the request and the following

exchange occurred between the court, Mr. Kugiya, and deputy

prosecuting attorney, Thalia Murphy, Esq.:

---

[1] Where not specifically noted, the facts herein are taken
from the Intermediate Court of Appeals of the State of Hawai`i
("ICA") opinions in Loher v. State, 118 Hawai`i 522, 193 P.3d 438
(Ct. App. 2008) ("Loher III"), and Loher v. State, No. 29818,
2011 WL 2132828 (Hawai`i Ct. App. May 31, 2011) ("Loher IV").

[2] Exhibit B1 comprises the first 100 pages of the Transcript
of Proceedings for November 14, 2000.  Exhibit B2 comprises the
remaining pages, 101 through 217.  Together they make up the
complete transcript for that day.

THE COURT: Under Rule 611 the Court has discretion to exercise control over the mode and order of interrogation. What the Court is going to do because there's more than enough time left in the day, we're going to continue with the trial. I'm going to allow the defense to call [Petitioner] to testify, then after he completes testifying, he can call whatever witnesses that's on call that may arrive today. We can continue with that, and then we can call the remaining witnesses on Thursday morning.

KUGIYA: Okay. Well, I need to note my objection to that, Your Honor, because [Petitioner] does have a right not to testify, and based on testimony of other witnesses, there may not be a need for him to testify if we can get everything we need across from the other people.

So in this vein the Court is actually forcing him to take the stand because now we have nobody to call, and you're saying, Well, [sic] we can call [Petitioner], but as a strategic manner in planning for our case, he was going to be the last witness I call, and depending how it went with the other witnesses, we may not need to call him because we can get everything that we need through the other witnesses.

So, in fact, now that we're being forced to call him as first witness in a sense is prejudicial to [Petitioner] because he's being forced to testify when he, in essence, we had not decided fully whether or not he would testify for sure.

THE COURT: The Court does not find the argument persuasive. The Court believes that it was the responsibility or is the responsibility of counsel to determine when witnesses would be available.

Defense counsel was free to discuss with the State the witnesses called and when they would anticipate finishing their case.

Defense counsel has hopefully prepared for
this case, so should be aware at the present
time what the witnesses that he intends to
call will testify.  And having prepared and
having a knowledge as to what they will say,
since they are the defense witnesses, then
they should be in the position to know
whether the defendant should testify.

So the Court believes it is not persuasive
that defense counsel should now argue to this
Court, after the Court had denied his request
to delay the trial till [sic] Thursday by
saying that he does not know what his own
witnesses will say and depending what they
say, he will then make the decision whether
his client's going to testify.

The Court would also note that during the
pretrial conferences, as well as in the
opening statement, the defendant has asserted
an alibi that he was not present at the time,
and that where the — his location would be
during certain times defense counsel has also
represented to the Court that his client is
going to testify.

The Court is not persuaded by his argument
and is concerned that this may be
manipulative in order to obtain the relief
that the Court had not granted.

In addition, throughout this trial [Mr.
Kugiya] has engaged in certain conduct in
questioning by proceeding with questions
where the Court has sustained and asking the
witness's [sic] questions which they have not
— no personal knowledge, and then, in effect,
testify by asking those witnesses who does
[sic] not have personal knowledge regarding
these matters.

And the Court on more than one occasion had
to admonish [Mr. Kugiya] during the motions
in limine.  I had made clear to [Mr. Kugiya]
that he was not to enter into certain areas.
During this trial he proceeded to do so.  In
particular, asking about where the witnesses

worked and now Court [sic] is faced with this situation.  I do not want to make any stronger statements than that, but I am concerned.

KUGIYA: Well, if I can respond.

THE COURT: Excuse me, and the Court is unpersuaded by your argument.  So we're going to proceed.  You may call your client to testify, or if you wish, not to testify or engage in Tachibana at this time, and he may waive his testimony.[3]  That is between you and your client.

So I'm going to take a recess, and before we do that, is your client going to testify or is he going to waive his right to testify?

KUGIYA: I'd like to discuss that matter with him.

MURPHY: I can leave the courtroom so that they can remain here.

KUGIYA: Your Honor, if I can just say we're not trying to delay this trial in any way.  It's just that it was my understanding from conversations that the State would probably, you know, run the whole day.  And so, you know, try not to inconvenience witnesses.  I don't want them coming around today on Tuesday, knowing that we wouldn't get to them.

It was my understanding that we would not start our case until Thursday, and that's why I indicated to them that we would probably start Thursday morning.

_____

[3] Tachibana refers to the Hawai`i Supreme Court decision, <u>Tachibana v. State</u>, 79 Hawai`i 226, 900 P.2d 1293 (1995), which holds that, in every criminal case where the defendant does not testify, the trial court must engage in a colloquy with the defendant, advising him of his constitutional right to testify, and obtaining an on-the-record waiver of that right.

THE COURT: I understand what you're saying.

KUGIYA: It's not for any purpose of delay. I would just like to say that I believe I have abided by the Court's rulings in motions in limine. I did not go into any other areas of what the Court prohibited.

THE COURT: Court will stand in recess.

[Id. at 160-64.] After the recess, Petitioner testified. [Id. at 164-216.] On direct examination, he stated that he served in the United States Army. [Id. at 166.] After direct, the court granted the prosecution's request to reconsider its ruling on a motion in limine excluding evidence of Petitioner's dishonorable discharge, and Ms. Murphy elicited that testimony during cross-examination. [Id. at 189-92.] Further, she elicited inconsistent statements between Petitioner's testimony and a statement Petitioner made to a detective the day after the assault, and evidence regarding a missing log book at the halfway house where Petitioner was living. [Id. at 196-215.]

On the next day of trial, Thursday, November 16, 2000, Petitioner presented his witnesses (his stepson and wife), the prosecution presented three rebuttal witnesses, the parties made their closing arguments, and the jury began deliberations. [Answer, Exhs. C1, C2 (Trans. of 11/16/00 Tr. Proceedings ("11/16/00 Tr. Trans.").[4]] The following day, Friday,

---

[4] Exhibit C1 comprises the first eighty-five pages of the Transcript of Proceedings for November 16, 2000. Exhibit C2
(continued...)

November 17, 2000, the jury found Petitioner guilty of Count I

and acquitted him of Count II. [<u>Id.</u>, Exh. D (Trans. of 11/17/00

Tr. Proceedings) at 4-5.]

On July 18, 2001, the trial court issued the judgment

of conviction and sentence. [<u>Id.</u>, Exh. F.] Petitioner, with

Mr. Shintani's assistance, appealed, but did not raise the <u>Brooks</u>

argument. [<u>Id.</u>, Exh. H (Petitioner's opening brief on appeal).]

On April 21, 2003, the ICA affirmed Petitioner's conviction.

<u>State v. Loher</u>, No. 24489, 2003 WL 1950475 (Hawai`i Ct. App. Apr.

21, 2003) ("<u>Loher I</u>"). The Hawai`i Supreme Court initially

granted Petitioner's application for a writ of certiorari, but

then dismissed it as improvidently granted on June 16, 2003.

[<u>Id.</u>, Exhs. L, M].

## II.  <u>Rule 40 Petition</u>

On October 18, 2005, Petitioner filed a pro se post-

conviction petition, pursuant to Haw. R. Penal P. 40, and for the

first time asserted that his trial counsel was ineffective for

forcing Petitioner to testify ("2005 Rule 40 Petition").[5]  On

_____

[4](...continued)
comprises the remaining pages, 86 through 172.  Together they
make up the complete transcript for that day.  There are,
however, a few pages missing.

[5]  Petitioner filed another Rule 40 Petition, also raising
the forced testimony issue, a year earlier on October 8, 2004
("2004 Rule 40 Petition").  Respondent provided that document,
and not the 2005 Rule 40 Petition, with his Answer as Exhibit W.
Subsequently, Respondent filed a Notice of Errata, attaching the
(continued...)

March 16, 2006, the trial court rejected Petitioner's claims without a hearing as "patently frivolous and without a trace of support either in the record or from other evidence submitted by the Petitioner." [Id., Exh. Y (Order Denying Petition for Post-Conviction Relief).]

Petitioner appealed. On July 14, 2008, the ICA affirmed, except it remanded to the circuit court for an evidentiary hearing on Petitioner's ineffective assistance of appellate counsel claim.[6] Loher III, 118 Hawai`i at 538-39, 193 P.3d at 454-55. The ICA reasoned that, since Mr. Shintani had not been given an opportunity to "explain his understanding of the 'forced testimony' issue, and the issue has not been fully briefed and argued at a hearing on the Rule 40 Petition, this court is unable to determine why the issue was not raised." Id. at 533, 193 P.3d at 449. The ICA explained the need for remand,

_____

[5](...continued)
correct, operative petition. [Filed 2/17/12 (dkt. no. 11).] According to the Amended Petition, at ¶ 8, and Loher III, the trial court dismissed the 2004 Rule 40 petition because Petitioner had a Haw. R. Penal P. 35 petition already pending before the trial court ("Rule 35 Petition"). The ICA ultimately rejected the Rule 35 petition, which first raised the Apprendi argument but not the Brooks argument, on February 11, 2005. State v. Loher, No. 26000, 2005 WL 335234 (Hawai`i App. Ct. Feb. 11, 2005) ("Loher II").

[6] The ICA held that, since Petitioner's trial and appellate counsel were different, Petitioner waived all claims of ineffective assistance of Mr. Kugiya that he had not raised on direct appeal. Ineffective assistance of Mr. Shintani was properly before it. Loher III, 118 Hawai`i at 531, 193 P.3d at 447.

If an appealable issue is omitted, then both
the issues actually presented on appeal as well as
those omitted are evaluated in light of the entire
record, the status of the law and, most
importantly, counsel's knowledge of both.
Counsel's scope of review and knowledge of the law
are assessed, in light of all the circumstances,
as that information a reasonably competent,
informed and diligent attorney in criminal cases
in our community should possess.  Counsel's
informed decision as to which issues to present on
appeal will not ordinarily be second-guessed.
Counsel's performance need not be errorless.  If,
however, an appealable issue is omitted as a
result of the performance of counsel whose
competence fell below that required of attorneys
in criminal cases then appellant's counsel is
constitutionally ineffective.

Id. (quoting Briones v. State, 74 Haw. 442, 466–67, 848 P.2d 966,

978 (1993)).

The ICA suggested that the Brooks claim might not have

been "potentially meritorious" at the time of the direct appeal

because exceptions to Brooks, as applied by the ICA in State v.

Kido, 102 Hawai`i 369, 76 P.3d 612 (Ct. App. 2003), might apply

to Petitioner's case.  Loher III, 118 Hawai`i at 533, 193 P.3d at

449.  Those exceptions included: (1) whether Petitioner had

intended to testify all along; and (2) whether Petitioner caused

the exigency that required he testify first.  Id.  The ICA

concluded: "The bottom line is that in the absence of a

sufficient record on this appeal, including an opportunity for

[Mr. Shintani] to be heard, we must remand for the development of

such a record on the issue of whether [Petitioner] had

ineffective assistance of appellate counsel."  Id. at 534, 193

P.3d at 450.  On September 8, 2008, the ICA remanded the 2005

Rule 40 Petition to the circuit court.  [Answer, Exh. GG.]

## III. **Evidentiary Hearing**

The circuit court reviewing the Rule 40 petition ("Rule

40 court") appointed Petitioner new counsel, Laura Yoshida, Esq.,

and a different circuit court judge from the one who presided

over Petitioner's trial held the evidentiary hearing on

January 7, 2009 and January 28, 2009.  [Id., Exhs. JJ (Trans. of

1/7/09 Hrg. on Rule 40 Petition ("1/7/09 Hrg. Trans.")), KK

(Trans. of 1/28/09 Hrg. on Rule 40 Petition ("1/28/09 Hrg.

Trans.")).]  On January 7, 2009, Mr. Shintani testified that, at

the time of Petitioner's appeal, he was not aware of the Brooks

opinion, but, if he had been, he "would have to have raised it."

[1/7/09 Hrg. Trans. at 11-12.]  Mr. Shintani also testified that,

since Petitioner was arguing an alibi defense, Mr. Shintani

"surmise[d]" that Petitioner would testify to support it.  [Id.

at 9-10.]  But, he stated that he did not have an independent

recollection of whether Petitioner told him that he had planned

to testify.  [Id. at 10.]  Further, he stated that he did not

argue Kido in Petitioner's brief because that opinion was not

published until four months after he filed Petitioner's brief.

[Id. at 8-9.]

Next, Petitioner testified that he and Mr. Kugiya only

met once prior to trial, and the first time they discussed

12

whether Petitioner would testify was when the trial court ordered him to testify then, or not at all. Petitioner stated that he told Mr. Kugiya he did not want to testify at trial, but he took the stand because it was his understanding that, if he did not, he would not be allowed to put on his other witnesses. Petitioner testified that he never intended to testify at trial. [Id. at 14-20.]

On January 28, 2009, the prosecution called Mr. Kugiya, who testified that he and Petitioner met numerous times before trial and Petitioner had always planned to testify at trial. [1/28/09 Hrg. Trans. at 6-11, 14-15.] Mr. Kugiya stated that they planned to have Petitioner testify last, but that was not possible because of the trial court's directive. Upon the Rule 40 court's questioning, Mr. Kugiya testified that the two defense witnesses testified in substance as he had expected, but even together they could not support a complete alibi defense. Further, he testified that the defense witnesses were not in court the first day of trial because the length of the prosecution's witness list and the severity of the charges led him to believe that the prosecution's case would continue into the second day. [Id. at 13-19.]

On April 14, 2009, the Rule 40 court issued its Findings of Fact, Conclusions of Law, and Order Denying Petition for Post-Conviction Relief ("FOF & COL"). [Answer, Exh. LL.] It

13

found Petitioner's testimony that he did not intend to testify, and only did so because he was "forced," not credible, and Mr. Kugiya's testimony regarding the multiple meetings, trial planning, and the decision to have Petitioner testify "no matter what," credible. [<u>Id.</u> at FOF ¶¶ 3-12.] The Rule 40 court also found that the defense witnesses were not present the first day of trial because of Mr. Kugiya's error in estimating the prosecution's case. [<u>Id.</u> at FOF ¶¶ 15-16.] The court concluded that the <u>Kido</u> exceptions applied and, therefore, Mr. Shintani's failure to raise the <u>Brooks</u> argument did not substantially impair Petitioner's constitutional rights. [<u>Id.</u> at COL ¶¶ 6-9.] On May 31, 2011, the ICA affirmed the FOF & COL. <u>Loher IV</u>, 2011 WL 2132828, at *10. Relying heavily on the credibility determinations of the Rule 40 court, it held that the Rule 40 court did not clearly err in finding that the <u>Kido</u> exceptions applied and that Mr. Shintani was not ineffective. <u>Id.</u> at *9.

<u>STANDARD</u>

## I. <u>Objections to F&R</u>

When a party objects to a magistrate judge's findings or recommendations, the district court must review de novo those portions to which the objections are made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); <u>see also</u> <u>United States v. Raddatz</u>, 447 U.S. 667, 673

14

(1980); <u>United States v. Reyna-Tapia</u>, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise." (emphasis omitted)).

Under a de novo standard, a district court reviews "the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered." <u>Freeman v. DirecTV, Inc.</u>, 457 F.3d 1001, 1004 (9th Cir. 2006) (citation omitted); <u>see also</u> <u>United States v. Silverman</u>, 861 F.2d 571, 576 (9th Cir. 1988). The district court need not hold a de novo hearing; however, it is the court's obligation to arrive at its own independent conclusion about those portions of the magistrate judge's findings or recommendations to which a party objects. <u>United States v. Remsing</u>, 874 F.2d 614, 616 (9th Cir. 1989).

"[I]n providing for a 'de novo determination' rather than <i>de novo</i> hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." <u>Raddatz</u>, 447 U.S. at 676 (emphasis in original) (citation omitted); <u>accord</u> <u>Holder v. Holder</u>, 392 F.3d 1009, 1022 (9th Cir. 2004) (citing <u>Raddatz</u>).

## II.  <u>Habeas Review</u>

A district court may not grant a petition challenging a state conviction on the basis of a claim that was reviewed on the

15

merits in state court unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 402-04 (2000). For purposes of § 2254(d)(1), "[c]learly established Federal law" is "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision[,]" Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003) (citations omitted), and refers to the holdings, rather than the dicta, of the Supreme Court's decisions. Williams, 529 U.S. at 412.

Under the "contrary to" clause of § 2254(d)(1), a federal court may grant relief only when the state court "applies a rule that contradicts Supreme Court case law or if it reaches a conclusion different from the Supreme Court's in a case that involves facts that are materially indistinguishable." Nevarez v. Barnes, No. 12-17060, 2014 WL 1646930, at *2 (9th Cir. Apr. 25, 2014) (per curiam) (citing Williams, 529 U.S. at 405, 120 S. Ct. 1495, 146 L. Ed. 2d 389). Under the "unreasonable application" clause, a federal court may grant relief only "if

the state court identifies the correct governing legal principle
. . . but unreasonably applies that principle to the facts of the
prisoner's case." <u>Williams</u>, 529 U.S. at 413.  The Antiterrorism
and Effective Death Penalty Act of 1996 ("AEDPA") does not
"prohibit a federal court from finding an application of a
principle unreasonable when it involves a set of facts different
from those of the case in which the principle was announced.  The
statute recognizes, to the contrary, that even a general standard
may be applied in an unreasonable manner."  <u>Panetti v.
Quarterman</u>, 551 U.S. 930, 953 (2007).

> [A]n **unreasonable** application of federal law is
> different from an **incorrect** application of federal
> law.  Indeed, a federal habeas court may not
> issue the writ simply because that court concludes in
> its independent judgment that the relevant state-
> court decision applied clearly established federal
> law erroneously or incorrectly.  Rather, that
> application must be objectively unreasonable.
> This distinction creates a substantially higher
> threshold for obtaining relief than de novo
> review.  AEDPA thus imposes a highly deferential
> standard for evaluating state-court rulings, and
> demands that state-court decisions be given the
> benefit of the doubt.

<u>Nevarez</u>, 2014 WL 1646930, at *2 (emphases in <u>Renico</u>) (quoting
<u>Renico v. Lett</u>, 559 U.S. 766, 773, 130 S. Ct 1855, 176 L. Ed. 2d
678 (2010)).

Under § 2254(d)(2), a state court's decision may only
be found unreasonable if the federal district court is "convinced
that an appellate panel, applying the normal standards of
appellate review, could not reasonably conclude that the finding

17

is supported by the record before the state court." <u>Murray v. Schriro</u>, 745 F.3d 984, 999 (9th Cir. 2014) (citation omitted). "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." <u>Cooper v. Brown</u>, 510 F.3d 870, 919 (9th Cir. 2007) (quoting <u>Miller–El v. Cockrell</u>, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003); 28 U.S.C. § 2254(e)(1)).

Although only Supreme Court case law is binding, Ninth Circuit precedent is "relevant persuasive authority in determining whether a state court decision is objectively reasonable." <u>Chia v. Cambra</u>, 360 F.3d 997, 1002–03 (9th Cir. 2004) (citation and quotation marks omitted). While habeas review focuses on the last reasoned state court decision, where the "last reasoned decision adopted or substantially incorporated the reasoning from a previous decision[,] . . . it is reasonable for the reviewing court to look at both decisions to fully ascertain the reasoning of the last decision." <u>Barker v. Fleming</u>, 423 F.3d 1085, 1093 (9th Cir. 2005).

<u>**DISCUSSION**</u>

**I.**   **Petitioner's _Brooks_ Claim**

    **A.**   **_Brooks_ Violation**

Petitioner argues that the trial court record shows that the trial court clearly violated both his right to remain silent and his right to due process. He claims that it was an

unreasonable application of <u>Brooks</u> for the ICA, in <u>Loher III</u>, to remand for an evidentiary hearing and, in <u>Loher IV</u>, to find no violation, relying on new testimony inconsistent with the trial record. [Objections at 2-4, 6-8; Mem. in Supp. of Amended Petition at 16-24.] The Court agrees.

In <u>Brooks v. Tennessee</u>, 406 U.S. 605 (1972), the United States Supreme Court held that a Tennessee statute, which required a criminal defendant to testify before any of his witnesses, violated the defendant's Fifth and Fourteenth Amendment rights to remain silent, and to due process. The Supreme Court reasoned that the "defendant's choice to take the stand carries with it serious risks of impeachment and cross-examination; it 'may open the door to otherwise inadmissible evidence which is damaging to his case.'" <u>Id.</u> at 609 (quoting <u>McGautha v. California</u>, 402 U.S. 183, 213, 91 S. Ct. 1454, 1470, 28 L. Ed. 2d 711 (1971)). Since he cannot be certain of what his witnesses will say,

> a defendant may not know at the close of the State's case whether his own testimony will be necessary or even helpful to his cause. Rather than risk the dangers of taking the stand, he might prefer to remain silent at that point, putting off his testimony until its value can be realistically assessed.

<u>Id.</u> at 610. Requiring the defendant to testify first "casts a heavy burden on a defendant's otherwise unconditional right not to take the stand." <u>Id.</u> at 610-11 (footnote omitted). The

19

Supreme Court held that the statute violated "an accused's constitutional right to remain silent insofar as it require[d] him to testify first for the defense or not at all." Id. at 612.

The Brooks Court also held that the statute violated the defendant's right to due process. The Supreme Court explained,

> Whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right. By requiring the accused and his lawyer to make that choice without an opportunity to evaluate the actual worth of their evidence, the statute restricts the defense – particularly counsel – in the planning of its case. Furthermore, the penalty for not testifying first is to keep the defendant off the stand entirely, even though as a matter of professional judgment his lawyer might want to call him later in the trial. The accused is thereby deprived of the 'guiding hand of counsel' in the timing of this critical element of his defense. While nothing we say here otherwise curtails in any way the ordinary power of a trial judge to set the order of proof, **the accused and his counsel may not be restricted in deciding whether, and when in the course of presenting his defense, the accused should take the stand.**

Id. at 612-13 (emphasis added).

Respondent's argument that "Petitioner conspicuously fails to provide any authority to support [the] contention" that Brooks recognizes two separate and distinct constitutional rights is misplaced. [Response at 4.] The Supreme Court clearly divided the Brooks decision into two sections: (1) the right to remain silent; and (2) the right to due process. Since then, the Supreme Court has explicitly recognized that Brooks protects a

criminal defendant's right to remain silent and his right to "make independent decisions about how to conduct the defense." Strickland v. Washington, 466 U.S. 668, 686 (1984) (some citations omitted) (citing Brooks, 406 U.S. at 612-13, 92 S. Ct. at 1895, 32 L. Ed. 2d 358); see also United States v. Cronic, 466 U.S. 648, 659, n.25 (1984) (recognizing that Brooks protects against "deni[al] of counsel at a critical stage of his trial"); United States v. Panza, 612 F.2d 432, 439 (9th Cir. 1979) ("[Brooks] guarantees counsel's freedom to decide when a defendant will take the stand.").

Recently, two justices of the Hawai`i Supreme Court also recognized criminal defendants' "constitutional right to control their defenses." State v. Adviento, 132 Hawai`i 123, 159, 319 P.3d 1131, 1167 (2014) (Nakayama J., Recktenwald, C.J., dissenting) (explaining that Brooks holds that criminal defendants have a "right to present a defense free from government interference").

The record before the ICA on direct appeal, in Loher I, and collateral appeal, in Loher III, clearly supports Petitioner's Brooks claim, that the trial court violated his right to remain silent and to control his own defense. Petitioner would not have taken the stand before his own witnesses if the trial court had not forced him to do so. Mr. Kugiya reasonably requested to wait until the next trial day

to start his case, but the trial court refused.  [11/14/00 Tr.
Trans. at 159-60.]  Mr. Kugiya objected that Petitioner had "a
right not to testify, and based on testimony of other witnesses,
there may not be a need for him to testify if we can get
everything we need across from the other people."  [Id. at 160.]
He argued that the trial court was "actually forcing him to take
the stand because now we have nobody to call[.]"  [Id.]
Mr. Kugiya stated, "now that we're being forced to call him as
first witness in a sense is prejudicial to [Petitioner] because
he's being forced to testify when he, in essence, we had not
decided fully whether or not he would testify for sure."  [Id. at
160-61.]

        The trial court disagreed, and stated, "[y]ou may call
your client to testify or engage in Tachibana at this time, and
he may waive his testimony.  That is between you and your
client."  [Id. at 163.]  The trial court recessed and, when
Petitioner took the stand, the prosecution elicited damaging
testimony.  [Id. at 192-215.]

        The trial court's actions were contrary to and an
unreasonable application of the Supreme Court's holding in
Brooks.  Mr. Kugiya did not intend to put Petitioner on the stand
first.  Rather, he objected that he might not have Petitioner
testify at all for the very reason described in Brooks, that the
defense "may not need to call him because we can get everything

we need through the other witnesses" [11/14/00 Tr. Trans. at
160]. See Brooks, 406 U.S. at 610 ("a defendant may not know at
the close of the State's case whether his own testimony will be
necessary"). As in Brooks, Mr. Kugiya wanted to delay
Petitioner's "testimony until its value [could] be realistically
assessed." See id. The trial court forced Petitioner and
Mr. Kugiya to decide whether to have Petitioner testify by
forcing him to choose between testifying immediately or forgoing
testifying at all. That is, it required Petitioner to "testify
first for the defense or not at all." See id. at 612. This
violated Petitioner's Fifth Amendment right to remain silent.
See id.

Even if Mr. Kugiya had planned to put Petitioner on the
stand, the trial court's order that Petitioner testify first or
not at all, "restricted the defense in planning its case" and
"deprived [Petitioner] of the 'guiding hand' of counsel[.]" See
id. at 612-13.

The ICA, in Loher III, had these facts before it. The
trial record clearly made out a meritorious Brooks claim, which
was fully raised by Mr. Kugiya's objections, and available to
Mr. Shintani on appeal. For these reasons, it was an
objectively unreasonable application of Brooks for the ICA to

remand for an evidentiary hearing, adding irrelevant evidence eight years after trial.[7]

### B. **Harmless Error**

Respondent argues, and the magistrate judge agreed, that the Brooks error was harmless. [Response at 2, 7-8; F&R at 30-31.] This misreads clearly established Supreme Court law holding that Brooks violations require automatic reversal.

In Brooks, the Supreme Court concluded, "Petitioner, then, was deprived of his constitutional rights when the trial court excluded him from the stand for failing to testify first. The State makes no claim that this was harmless error, Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), and petitioner is entitled to a new trial." 406 U.S. at 612. The state in Brooks did not argue the violation was harmless because it was not.

The Supreme Court has since stated that Brooks violations, like other constitutional violations where counsel is

_____

[7] Further, if the purpose of the evidentiary hearing was for counsel to have the "opportunity to explain his or her actions in an appropriate proceeding before the trial court judge," see Briones, 74 Haw. at 463, 848 P.2d at 977, there was no reason for the testimony on remand to go beyond Mr. Shintani's statement that he did not omit Petitioner's Brooks claim due to page limits, but because he was not aware of Brooks (and if he had been he "would have to have raised it") [1/7/09 Hrg. Trans. at 6, 11-12]. There was no need to call Petitioner or Mr. Kugiya and create new evidence as to the merit of the Brooks claim since Mr. Shintani's omission of the issue on appeal was clearly not strategic.

"prevented from assisting the accused during a critical stage of

the proceeding[,]" do not require "any showing of prejudice[.]"

Cronic, 466 U.S. at 659 n.25. The Supreme Court reasons that,

> Actual or constructive denial of the assistance of
> counsel altogether is legally presumed to result
> in prejudice. So are various kinds of state
> interference with counsel's assistance. See
> United States v. Cronic, 466 U.S. at 659, and
> n.25, 104 S. Ct. at 2046-2047, and n.25.
> Prejudice in these circumstances is so likely that
> case-by-case inquiry into prejudice is not worth
> the cost. 466 U.S., at 658, 104 S. Ct., at 2046.
> Moreover, such circumstances involve impairments
> of the Sixth Amendment right that are easy to
> identify and, for that reason and because the
> prosecution is directly responsible, easy for the
> government to prevent.

Strickland, 466 U.S. at 692; see also Perry v. Leeke, 488 U.S.

272, 280 (1989) (explaining that Strickland "intended to make

clear that '[a]ctual or constructive denial of the assistance of

counsel altogether,' is not subject to the kind of prejudice

analysis that is appropriate in determining whether the quality

of a lawyer's performance itself has been constitutionally

ineffective" (alteration in Perry) (quoting Strickland, 466 U.S.

at 692, 104 S. Ct. at 2063-64, 80 L. Ed. 2d 674)); Bell v. Cone,

535 U.S. 685, 696 n.3 (2002) (quoting Cronic, including citation

to Brooks, that actual or constructive denial of counsel requires

no showing of prejudice).

The Supreme Court has held that constitutional

violations, like Brooks violations, where prejudice is presumed,

are "structural errors." In Brecht v. Abrahamson, 507 U.S. 619,

25

629-30 (1993), the Supreme Court clarified the standard for
setting aside a conviction for both "trial errors" and
"structural errors."  Regarding structural errors, the Supreme
Court held: "The existence of such defects – deprivation of the
right to counsel, for example – requires automatic reversal of
the conviction because they infect the entire trial process."
Id. (footnote omitted) (citing Arizona v. Fulminante, 499 U.S.
279, 309-10, 111 S. Ct. 1246, 1265, 113 L. Ed. 2d 302 (1991)).
Since then, the Supreme Court has confirmed that automatic
reversal of a conviction "applies when . . . counsel [is] either
totally absent, or prevented from assisting the accused during a
critical stage of the proceeding."  Wright v. Van Patten, 552
U.S. 120, 124-25 (2008) (some alterations in Wright) (citations
and quotation marks omitted).  It reasons, "[a] trial would be
presumptively unfair . . . where the accused is denied the
presence of counsel at 'a critical stage,' . . . that held
significant consequences for the accused."  Bell, 535 U.S. at
695-96 (footnote and citations omitted).  The Bell Court
specifically cited Brooks as an example.  Id. at 696 n.3.

        Petitioner brought a valid Brooks claim.  According to
Cronic and its progeny, Brooks violations are structural errors,
which require the presumption of prejudice and automatic
reversal.  For this reason, the magistrate judge erred in
applying a harmless error analysis, and this Court concludes that

Petitioner's claim requires automatic reversal. See, e.g., Frost v. Van Boening, No. 11-35114, 2014 WL 1677820 (9th Cir. Apr. 29, 2014) (reversing denial of habeas petition where Washington Supreme Court found a structural error, but then applied harmless error analysis); Musladin v. Lamarque, 555 F.3d 830, 838 (9th Cir. 2009) (holding Cronic's "rule requiring automatic reversal where a defendant was denied counsel at a 'critical stage' is binding on this court" and "applies in proceedings governed by AEDPA" (footnote omitted)).

Even if harmless error analysis applies, the error was not harmless. Brooks recognizes that the choice to testify "carries with it serious risks of impeachment and cross-examination" and, in doing so, a defendant "may open the door to otherwise inadmissible evidence which is damaging to his case." 406 U.S. at 609 (citation omitted).

Here, the prosecution elicited inconsistent statements between Petitioner's testimony and statements he made to a detective the day after the assault, and evidence regarding a missing log book where Petitioner was living at the time of the assault. [11/14/00 p.m. Trans. at 196-215.] Further, Mr. Kugiya opened the door to questioning on Petitioner's dishonorable discharge that was previously ruled inadmissible. [Id. at 189-92.] Although these issues might have arisen if Petitioner testified at the end of his case, this is speculative. Also, it

is arguable that these issues may not have had the same effect had Petitioner testified after his alibi witnesses, and may not have arisen at all if Petitioner had decided not to testify.

Under Brecht, for all non-structural, constitutional trial errors, the test is whether the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" 507 U.S. at 637 (quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253, 90 L. Ed. 1557 (1946)).[8] Forcing Petitioner to take the stand resulted in his impeachment, admission of previously inadmissible evidence, and undermining his central defense. There is "grave doubt" as to whether the error had a substantial influence on the result. See Hedgpeth v. Pulido, 555 U.S. 57, 65 (2008). Thus, even if harmless error analysis applied to Petitioner's Brooks violation, this Court concludes that the violation was not harmless.

**C.    Application of *Kido***

Since the trial record showed a clear Brooks error, it was an unreasonable application of Brooks to remand and apply Kido. Even assuming, arguendo, that Kido applied, the ICA's rejection of Petitioner's Brooks claim was an unreasonable application of Supreme Court law.

_____

[8] Brecht applies to trial errors where the state court did not reach the harmless error analysis. See Fry v. Pliler, 551 U.S. 112, 116 (2007).

In <u>Kido</u>, the ICA vacated a jury verdict convicting Kido of two felonies and remanded for a new trial because the court forced him to testify first in his defense under facts similar to Petitioner's case. On the morning of the second day of trial, the prosecution rested. <u>Kido</u>, 102 Hawai`i at 371, 76 P.3d at 614. As here, when Kido was unable to locate his only other witness, the court forced him, over counsel's objection, to take the stand. <u>Id.</u> at 371-72, 76 P.3d at 614-15. Kido testified and, after his witness testified, the jury convicted him. <u>Id.</u> at 372-73, 76 P.3d at 615-16.

The ICA in <u>Kido</u> found a <u>Brooks</u> violation "because the choice foisted upon Kido was effectively the same choice the Tennessee statute forced upon Brooks." <u>Id.</u> at 376, 76 P.3d at 619. It explained that the trial "boiled down to the credibility of the witnesses," and hearing his witness's testimony first "would surely have enlightened Kido's decision whether to testify in his own defense." <u>Id.</u> at 379, 76 P.3d at 622. The ICA concluded: "Had the court allowed [Kido's witness] to testify first, perhaps Kido would then have been well advised to leave well enough alone. The pertinent point is that he would have been afforded the constitutionally-mandated means and opportunity to make the decision, so informed." <u>Id.</u> (some citations omitted) (citing <u>Brooks</u>, 406 U.S. at 608, 612-13, 92 S. Ct. 1891, 32 L. Ed. 2d 358).

In reaching this decision, the ICA applied three exceptions that some state and federal courts have applied in denying <u>Brooks</u> claims: "(1) where the trial court required that the defendant testify before only some of his witnesses, (2) where the defendant's decision whether to testify congealed before the trial court's action, and/or (3) where the defendant himself created the exigency for taking his testimony first." <u>Id.</u> (footnotes omitted). The ICA held that these exceptions did not apply, and any delay caused by waiting for the defendant's witness, who was then testifying in another courtroom, would have been "trifling."[9] <u>Id.</u>

Here, it was an unreasonable determination of the facts to remand for more evidence on whether the <u>Kido</u> exceptions applied since the record was already clear that they did not.[10]

The first <u>Kido</u> exception does not apply because the trial court required Petitioner to testify before all of his witnesses. With regard to the second <u>Kido</u> exception, similar to Kido, Petitioner's decision to testify had not congealed before the trial court's action. The trial record shows that Mr. Kugiya

---

[9] This Court notes that neither the United States Supreme Court nor the Ninth Circuit has recognized any of the exceptions to the constitutional rights protected by <u>Brooks</u> that the ICA applied in <u>Kido</u>.

[10] If anything, <u>Kido</u> supports Petitioner's claim. The ICA in <u>Kido</u> found that the trial court violated Kido's rights by forcing him to testify first or not at all, in a short criminal trial, which largely boiled down to credibility determinations.

stated that he and Petitioner had **not** decided whether Petitioner would testify. [11/14/00 Tr. Trans. at 160-61.] And, although the trial court stated, "defense counsel has also represented to the Court that his client is going to testify[,]" [id. at 162,] there is nothing in the record to support this statement. Further, Mr. Kugiya did **not** promise in his opening statement that Petitioner would testify [id. at 11-17] and, in Hawai`i, an alibi defense is not an affirmative defense and does not require a defendant to take the stand. See State v. Cordeira, 68 Haw. 207, 210, 707 P.2d 373, 376 (1985); Haw. R. Penal P. 12.1.

Thus, the record on appeal was clear that Petitioner had not decided to testify, unlike the records in the cases cited in Kido. See Kido, 102 Hawai`i at 377 n.8, 76 P.3d at 619 n.8; see also United States v. Leon, 679 F.2d 534, 538 (5th Cir. 1982) ("The record shows that counsel and Hicks already had discussed the matter, and Hicks had decided to testify."); State v. Turner, 751 A.2d 372, 384 (Conn. 2000) ("He indicated on the record that he had decided to testify at the close of the state's evidence . . . ."); State v. Amos, 262 N.W.2d 435, 437 (Minn. 1978) ("in his opening statement, . . . defense counsel made it clear that defendant would testify").

This Court also questions whether this second exception from Kido is consistent with Brooks. The Brooks Court emphasized that a defendant "cannot be absolutely certain that his witnesses

31

will testify as expected or that they will be effective on the stand." 406 U.S. at 610-11. Even a statement that a defendant plans to testify should not be held against him. As then-circuit Judge Anthony Kennedy wrote:

> At the outset of the trial, a defendant in good faith may intend to testify, but it may be quite reasonable for him to change his mind after considering the course taken by the evidence. All of us know a defendant may tell a brave story to his counsel only to succumb to fear once the full weight of the prosecution's case becomes apparent. In these instances a defendant and his counsel often elect to invoke the self-incrimination privilege despite an earlier plan to testify. Thus, a defendant cannot be bound by any pretrial statement of election; in fact, it would appear to be unconstitutional to do so. See Brooks v. Tennessee, supra. There is absolutely nothing to guarantee the sincerity of such pretrial assurances, and even when statements of election are given in good faith, they may be based on fictional assumptions.

United States v. Cook, 608 F.2d 1175, 1189 (9th Cir. 1979) (Kennedy J., dissenting in part and concurring in part).[11]

Regarding the third exception, as in Kido, Petitioner did not create the exigency. Mr. Kugiya relied on the prosecution's representations and its lengthy witness list when he told Petitioner's witnesses to be present on the second day of trial. See 11/14/00 Tr. Trans. at 159, 163; Loher III, 118

---

[11] In any event, even if the congealed exception was proper, and Petitioner's decision had congealed, it only implicates Petitioner's right to remain silent. The record shows that the trial court violated Petitioner's right to control his defense. See supra Section I.A. Thus, Petitioner had a valid Brooks claim and remand was unreasonable. See Brooks, 406 U.S. at 612-13.

Hawai`i at 524, 193 P.3d at 440 (pretrial memorandum stated trial to take five to six days). He did not disregard a court order, or mislead the prosecution in any way that would warrant such a severe penalty as denial of Petitioner's constitutional rights. See, e.g., Harris v. Barkley, 202 F.3d 169, 174 (2d Cir. 2000) (finding no Brooks violation where defense disobeyed court directive to have all witnesses present on a date certain); Turner, 751 A.2d at 382 (no violation where defense did not disclose alibi defense until a year after the prosecution demanded notice and only after the prosecution rested).[12]

For all of these reasons, it was contrary to and an unreasonable application of Brooks for the ICA to remand the case to bolster the record since Kido supported Petitioner's valid Brooks claim, and the record was already clear that the Kido exceptions did not apply.

### D. **Hawai`i Rule of Evidence 611**

In denying Mr. Kugiya's objection to the directive that Petitioner take the stand, the trial court relied on its "discretion to exercise control over the mode and order of interrogation." See 11/14/00 Tr. Trans. at 159-60. However, "Brooks did not 'curtail[] in any way the ordinary power of a trial judge to set the order of proof,'" see Menendez v. Terhune,

---

[12] The Court further finds that remanding to determine whether the delay was "trifling" was unreasonable, since nothing at the evidentiary hearing would have resolved this issue.

33

422 F.3d 1012, 1031 (9th Cir. 2005) (alteration in <u>Menendez</u>) (quoting <u>Brooks</u>, 406 U.S. at 613, 92 S. Ct. 1891, 32 L. Ed. 2d 358), and nothing in this order undermines the discretion of a trial judge to control trial. While Haw. Rev. Stat. § 626-1, Rule 611, grants a trial court the right to "exercise reasonable control over the mode and order of . . . presenting evidence[,]" it does not trump a criminal defendant's federal constitutional rights. Like Fed. R. Evid. 611, Haw. R. Evid. 611, is a procedural rule that allows a trial court to operate with judicial economy. It does not permit a court to limit a defendant's constitutional rights.

The ICA has itself recognized this, stating that "the accused and his counsel may not be restricted in deciding whether, and when in the course of presenting his defense, the accused should take the stand." <u>Desmond v. Admin. Dir. of the Courts, State of Hawai`i</u>, 91 Hawai`i 212, 219, 982 P.2d 346, 353 (Ct. App.) (quoting <u>Brooks</u>, 406 U.S. 605, 92 S. Ct. at 1895, 32 L. Ed. 2d 358), *rev'd in part on other grounds*, 90 Hawai`i 301, 978 P.2d 739 (1998).

This Court's decision that it was a constitutional violation for the trial court to require Petitioner to testify first or not at all does not "curtail[] in any way the ordinary power of a trial judge to set the order of proof[.]" <u>See</u> <u>Brooks</u>,

34

406 U.S. at 613. Requiring a defendant to testify first is not merely ordering proof at trial.

### E. __Summary__

Since the ICA's remand and rejection of Petitioner's Brooks claim was contrary to and an unreasonable application of Brooks, the Court GRANTS Petitioner's Objections to the extent that the F&R denied Petitioner relief on Ground I.

## II. __Petitioner's Ineffective Assistance Claim__

Petitioner argues that Mr. Shintani was ineffective for failing to raise Petitioner's Brooks claim on direct appeal. To prevail on this claim, Petitioner must prove (1) "counsel acted unreasonably in failing to discover and brief a merit-worthy issue" and (2) "a reasonable probability that, but for appellate counsel's failure to raise the issue, the petitioner would have prevailed in his appeal." See Moormann v. Ryan, 628 F.3d 1102, 1106 (9th Cir. 2010).

As discussed, the trial record is clear that the Brooks claim had merit and thus it was unreasonable and prejudicial to Petitioner that Mr. Shintani did not raise it. The Court therefore GRANTS Petitioner's Objections to the extent that the F&R denied Petitioner relief on Ground II.

### CONCLUSION

On the basis of the foregoing, Petitioner's Objections to Magistrate Judge's Findings and Recommendation, filed

November 14, 2013, is HEREBY GRANTED in its entirety.

Accordingly, the magistrate judge's Findings and Recommendation to Grant in Part and Deny in Part Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed October 2, 2013, is HEREBY ADOPTED IN PART AND REJECTED IN PART to grant relief upon all three grounds in the Amended Petition.  Petitioner's Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed May 7, 2012, is HEREBY GRANTED in its entirety.  The Court ORDERS Respondent to release Petitioner within thirty days after the judgment in the instant case is filed, subject to appropriate release conditions, unless the State elects to retry Petitioner.[13]  Further, the Court ORDERS Respondent to report to the district court, within sixty days after the judgment in the instant case is filed, whether Petitioner was released or will be retried.

//

//

//

//

---

[13] See Herrera v. Collins, 506 U.S. 390, 403 (1993) ("The typical relief granted in federal habeas corpus is a conditional order of release unless the State elects to retry the successful habeas petitioner[.]").

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 31, 2014.



     /s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

FRANK O. LOHER VS. TODD THOMAS; CIVIL 11-00731 LEK-KSC; ORDER
GRANTING PETITIONER'S OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS
AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART AMENDED
PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A
PERSON IN STATE CUSTODY; ADOPTING IN PART AND REJECTING IN PART
THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION; GRANTING
PETITIONER'S AMENDED PETITION; AND ORDERING RESPONDENT TO RELEASE
PETITIONER FROM CUSTODY